REVISED February 15, 2024

# United States Court of Appeals for the Fifth Circuit

———————

No. 22-10441

———————

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2024

Lyle W. Cayce
Clerk

Karen Jimerson; JJ; JJ; XP; JP,

*Plaintiffs—Appellees,*

*versus*

Mike Lewis, Lt,

*Defendant—Appellant.*

———————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2826

———————————————

Before Stewart, Dennis, and Southwick, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

A search warrant showed the correct address for the target house, but police officers executed the warrant at an incorrect address. The homeowner brought suit against the officers under Section 1983. When denying summary judgment on the issue of qualified immunity for the officer who led the search, the district court held that fact questions prevented deciding the issue. We find no genuine disputes of material fact. The disputed issue is one of law. We conclude that this officer's efforts to identify the correct

residence, though deficient, did not violate clearly established law. REVERSED and REMANDED for dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2019, at approximately 7:15 p.m., Waxahachie Police Department ("WPD") SWAT Team Commander Mike Lewis received a call from a Drug Enforcement Administration ("DEA") officer. The DEA officer needed assistance executing a search warrant that night on a suspected methamphetamine "stash" house located at 573 8th Street, Lancaster, Texas ("target house"). The officer provided Commander Lewis with information about a drug deal involving the target house. Lewis requested further information, including pictures of the target house, whether "the location was fortified," whether "it appeared to have surveillance equipment," and whether "there were any exterior indicators on the property that children may be present." He also "requested identifying information on the [methamphetamine] seller, as well as prior law enforcement history at that address" involving the Lancaster Police Department ("LPD").

In response, Lewis received pictures showing the front of the house and was told there was "surveillance established at the location." DEA agents told Lewis that they saw no fortification or surveillance cameras at the property or any evidence of children. The agents had no description of the people occupying the target house.

Lewis entered the information into the WPD SWAT's risk analysis assessment worksheet, which scored the incident within the range for "optional SWAT deployment." Consequently, Lewis contacted the WPD Chief and received approval to activate the SWAT team. He also gathered information on the target house from the Dallas Central Appraisal District website, including that the house was 744 square feet, was built in 1952, and had a "large, deeply extending backyard."

No. 22-10441

Lewis then briefed SWAT officers at the WPD. The group decided to have a six-member team enter the target house and a three-member team enter the detached garage and backyard. Thereafter, Lewis received "real-time intelligence that surveillance officers at the scene reported a truck pulling a white box trailer [had] pulled up in front of the target location."[1] When Lewis received a copy of the warrant, he confirmed the address of the target house. The officers then finalized their preparations. LPD Officer Zachary Beauchamp led the SWAT team to the target house. Beauchamp was followed by the SWAT team vehicle, then Lewis in his marked patrol unit, then the Waxahachie K9, and then several unmarked DEA vehicles. Beauchamp was directed "to stop about a house before the target location, so SWAT officers could make an approach on foot."

When they arrived at the area, the SWAT team vehicle's driver saw Beauchamp's vehicle stop abruptly, "causing him to believe [Beauchamp] may have driven too far and stopped them too close to the target location." As the officers exited their vehicles, Beauchamp pointed to the house with the truck and white trailer in front of it, and officers began their approach. As the SWAT team began gathering on the front porch, however, Lewis realized that the house did not look like the house from intelligence photos. The SWAT team had assembled at 583 8th Street, not at the target house at 573 8th Street.

When Lewis looked one house to the left, he decided the layout of the front of that house matched the one in the intel photos. Lewis noticed that "[f]rom left to right, it had one large window, followed by the front entry door, followed by a small window and then [four] larger windows." He also

---

[1] The record indicates that this intelligence was not accurate. Later investigation revealed that the white trailer was in front of 583 8th Street — not the target house.

No. 22-10441

noticed that "[t]he driveway was . . . on the left side of the property," and he believed numbers on the front of the house read "573," though the porch light obscured his view. This house, it turns out, was *also* the wrong house. The house Lewis identified was 593 8th Street, two doors down from the target house.

Nevertheless, Lewis told the team that they were at the wrong house and instructed them to "go to the house just to the left of the house where they were." That house was the home of plaintiffs Karen Jimerson, James Parks, and their two young sons and daughter. Officers ran to the front of the plaintiffs' house, deployed a flashbang, broke the front windows, and breached the door. The officers began a protective sweep and checked for occupants. They "encountered two females" whom they told to get on the ground. The officers then encountered an adult male, but before they could direct him to get down, SWAT team members yelled "Wrong House!"

The SWAT team left the plaintiffs' home and proceeded to the target house. After the target house was secured, Lewis returned to the plaintiffs' house, where he joined other DEA agents who were already checking on the plaintiffs' welfare. Plaintiff Karen Jimerson reported some pain in her side. Lewis called an ambulance and she was taken to the hospital. Lewis also coordinated with a glass company to make repairs and remained on the scene until 1:30 a.m.

A WPD internal investigation determined that "reasonable and normal protocol was completely overlooked" and the WPD Chief of Police stated that these kinds of mistakes should not happen. Lewis was suspended for two days without pay.

In September 2020, the plaintiffs brought this action under 42 U.S.C. § 1983. They alleged violations of the Fourth Amendment and several state laws against 20 John Doe defendants. They later amended their complaint,

No. 22-10441

naming each of the individuals in the WPD SWAT team who executed the warrant, including Lewis. Shortly thereafter, the plaintiffs' state-law tort claims were dismissed. The defendants moved for summary judgment based on qualified immunity, and the matter was referred to a magistrate judge for pretrial management.

The magistrate judge recommended the district court grant qualified immunity to all the officers, whether they entered the house or not. The magistrate judge also concluded the plaintiffs failed to show that Lewis did not make reasonable efforts to identify the target house.

The district court agreed with the magistrate judge's analysis on qualified immunity except with respect to whether Lewis made reasonable efforts to identify the target house. The court found "a genuine dispute of material fact regarding whether [Lewis] made the necessary reasonable effort to identify the correct residence and whether his actions were '[in]consistent with a reasonable effort to ascertain and identify the place intended to be searched,'" quoting *Maryland v. Garrison*, 480 U.S. 79, 88 (1987). The court denied Lewis qualified immunity. Lewis timely appealed.

## DISCUSSION

Federal and state officials may be entitled to qualified immunity from claims for money damages for their actions. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). To overcome this defense, a plaintiff needs to plead plausible facts "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

If the district court denies qualified immunity either on a motion to dismiss or on summary judgment, the defendant official may immediately appeal under the collateral order doctrine. *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996). Here, summary judgment was denied, and our review is *de novo*.

No. 22-10441

*Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020). Review is limited to considering issues of law, including the legal significance of factual disputes identified by the district court. *Id.* at 331. That means "we may evaluate whether a factual dispute is *material* (*i.e.*, legally significant), but we may not evaluate whether it is *genuine* (*i.e.*, exists)." *Id.* (emphasis in original). "Because the plaintiff is the non-moving party, we construe all facts and inferences in the light most favorable to the plaintiff." *Melton*, 875 F.3d at 261.

As a preliminary matter, Lewis argues the plaintiffs failed to plead and argue that his efforts to identify the correct house were unreasonable. A plaintiff seeking to overcome qualified immunity "must specifically identify each defendant's personal involvement in the alleged wrongdoing." *Thomas v. Humfield*, 32 F.3d 566, 1994 WL 442484, at *5 (5th Cir. 1994). The plaintiffs complied with the need for specificity by alleging in the complaint that Lewis "was the person in charge" of the mistaken raid on their home, and in their summary judgment arguments that Lewis was the "overall leader of [the] misconduct" and that he overlooked "reasonable and normal protocol."

As to the merits, Lewis does not challenge the district court's analysis of whether defendants violated the plaintiffs' rights under federal law. The Fourth Amendment provides that individuals have a right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that officers must make "reasonable effort[s] to ascertain and identify the place intended to be searched" in order to comply with the Fourth Amendment. *Garrison*, 480 U.S. at 88. To be clear about an occasional irrelevant addition to the proper analysis, we do not consider whether the officer's actions were "objectively unreasonable." That quoted standard is a "vestige of older caselaw that predates the Supreme Court's current test." *Parker v. LeBlanc*,

No. 22-10441

73 F.4th 400, 406 n.1 (5th Cir. 2023). In another precedential rejection of an "objectively unreasonable" component of qualified immunity, we held there is no "standalone 'objective reasonableness' element to the Supreme Court's two-pronged test for qualified immunity." *Baker v. Coburn*, 68 F.4th 240, 251 n.10 (5th Cir. 2023).

We evaluate the reasonableness of Lewis's actions because the plaintiffs' claims arise under the Fourth Amendment. The district court denied qualified immunity because the court found a "genuine dispute of material fact regarding whether [Lewis] made the necessary reasonable efforts to identify the correct residence." As we stated earlier, we cannot review a district court's determination that a factual dispute is genuine. *Bartlett*, 981 F.3d at 331. We are to decide, though, legal significance, *i.e.*, whether disputed facts are material to resolution of the case. *Id.*

The district court did not find evidentiary disputes about what Lewis and others did before entering the incorrect house. The court stated that the central dispute was whether those actions constituted "necessary reasonable efforts." Certainly, unlike here, exactly what an officer did may sometimes be factually unclear. A court's determination of reasonableness under the Fourth Amendment, though, "'is predominantly an objective inquiry.'" *al-Kidd*, 563 U.S. at 736 (quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 47 (2000)). The circumstances are to be "viewed objectively" and a determination made of whether they "justify" the search. *Id.* (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)).

Consequently, as a legal issue for our *de novo* review, we consider whether Lewis's conduct violated clearly established law. *See id.* at 325–26. Clearly established law is determined by reference to "controlling authority[,] or a robust consensus of persuasive authority." *Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018) (citation omitted). The keystone

No. 22-10441

in this analysis is fair warning. *Id.* at 139–40. To overcome qualified immunity, plaintiffs must cite "a body of relevant case law [] in which an officer acting under similar circumstances . . . was held to have violated" a defendant's constitutional rights. *Bartlett*, 981 F.3d at 330 (quotation marks and citations omitted). "While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Id.* (quoting *al–Kidd*, 563 U.S. at 741).

Compliance with the Fourth Amendment requires a law enforcement officer's "reasonable effort[s] to ascertain and identify the place intended to be searched." *Garrison*, 480 U.S. at 88. In applying that general principle, the district court relied on two opinions. One was a nonprecedential opinion of this court. *Rogers v. Hooper*, 271 F. App'x 431 (5th Cir. 2008). The other was nonprecedential in the Fifth Circuit because it was issued by a different circuit court of appeals. *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995).[2] The plaintiffs do not cite any other authority.

In *Rogers*, we affirmed a grant of qualified immunity. *Rogers*, 271 F. App'x at 436. Officers secured a warrant to search a suspected drug house. *Id.* at 432. Before executing the warrant, officers drove by the target house to confirm its location. *Id.* They saw a maroon vehicle parked in front of the

-----

[2] A nonprecedential opinion "cannot be the source of clearly established law for qualified immunity analysis." *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019). Nevertheless, such opinions may be used to illustrate clearly established law. *Bartlett*, 981 F.3d at 341 n.105; *see also Cooper v. Brown*, 844 F.3d 517, 525 n.8 (5th Cir. 2016). As for *Hartsfield*, "[w]e have not previously identified the level of out-of-circuit consensus necessary to put the relevant question 'beyond debate'" and to constitute clearly established law. *Morrow v. Meachum*, 917 F.3d 870, 879 (5th Cir. 2019) (quoting *al–Kidd*, 563 U.S. at 741). It is unlikely that one out-of-circuit case is sufficient.

target house. *Id.* The officers then briefed their team on the location of the home and developed a plan for executing the warrant. *Id.* The night of the warrant's execution, however, the maroon vehicle was parked in front of the house next door to the target house. *Id.* Officers broke into that house before ultimately realizing their mistake. *Id.*

We emphasized that the officers made several efforts to identify the correct residence, including conducting "initial surveillance of the house shortly before the warrant was executed, though [the officers] increased the chance for mistake by approaching the house in the opposite direction than they would use later." *Id.* at 435. There were differences in appearance between the mistaken house and target house, but "those differences were less noticeable at night." *Id.* Further, we acknowledged the confusion that arose from the fact that "a car that earlier had been thought to be in front of the house to be searched was instead in front of the [p]laintiffs' home when the search began." *Id.* "[T]he officers made reasonable efforts, though obviously insufficient ones, to identify the correct house." *Id.*

In *Hartsfield*, the Eleventh Circuit determined that an officer was not entitled to qualified immunity when he executed a warrant at the wrong residence. 50 F.3d at 956. The officer had been to the proper residence the day before. *Id.* at 951. On the day of the raid, though, he did little to ensure he was leading officers to the correct address:

> As it is uncontroverted that the numbers on the houses are clearly marked, and that the raid took place during daylight hours, simply checking the warrant would have avoided the mistaken entry. Moreover, evidence before the court showed that the houses were located on different parts of the street, separated by at least one other residence, and that their appearances were distinguishable.

No. 22-10441

*Id.* at 955. "[S]earching the wrong residence when [the officer] had done nothing to make sure he was searching the house described in the warrant" violated clearly established law. *Id.*

The dissent argues *Hartsfield* and *Rogers* constitute clearly established law that distinguishes Lewis's actions as objectively unreasonable under the fair warning analysis. Even if these two nonprecedential opinions were indicative of clearly established law, they would not support that Lewis violated that law. Lewis erred, but he made significant efforts to identify the correct residence. As the district court summarized, Lewis

> (1) reviewed the search warrant; (2) conducted additional searches on the target residence through the Dallas Central Appraisal District website; (3) ran a computerized criminal history search of the occupant of the target residence; (4) debriefed with DEA agents twice; (5) was provided with "real-time intelligence that surveillance officers at the scene reported a truck pulling a white box trailer just pulled up in front of the target location and stopped;" and (6) observed the home and took note of the front windows, driveway, and the numbers on the front of the home in an attempt to confirm the residence as being the target location.

To elaborate on that final point, Lewis was careful to confirm the house had the proper arrangement and size of windows, but only later became aware that those window features were shared by the plaintiffs' home. Moreover, Lewis's confusion was compounded by misleading intelligence. When officers arrived, the white trailer was not parked in front of the target house. Lewis correctly identified that fact, but then erred in redirecting the officers. Lewis was far more careful than the officers in the two opinions cited to us as showing he violated clearly established law.

The "central concern" when evaluating the immunity question "is whether the official has fair warning that his conduct violates a constitutional

No. 22-10441

right." *Delaughter*, 909 F.3d at 140. That means the "dispositive question is whether the violative nature of *particular* conduct is clearly established." *Morrow*, 917 F.3d at 875 (emphasis in original) (quotation marks and citation omitted). Here, the plaintiffs have not cited authority demonstrating that Lewis's conduct violated clearly established law.

We REVERSE the district court's denial of summary judgment to Lewis and REMAND in order for the district court to dismiss this suit.

No. 22-10441

James L. Dennis, *Circuit Judge*, dissenting:

I respectfully dissent from the majority opinion. The district court properly denied qualified immunity to Lieutenant Mike Lewis, commander of the Waxahachie Police Department (WPD) SWAT team. The Jimersons' Fourth Amendment claim against Lewis is based on his failure to take sufficient steps to ensure that his team executed a no-knock warrant at the correct address. The district court found that factual disputes as to the reasonableness of Lewis' efforts to identify the target house precluded granting qualified immunity to Lewis. While I agree with the majority's finding that there are no factual disputes as to Lewis' actions in leading the SWAT team to the wrong residence, I disagree that Lewis is entitled to qualified immunity[1] under clearly established law.

Based on the undisputed facts in this case, Lewis failed to use the intelligence he received from the Drug Enforcement Administration (DEA) that would have easily allowed him to direct the SWAT team to the target house. The DEA alerted Lewis that the house number was painted on the curb and affixed to a wooden pole on the deck, and that the target house was the thirteenth one on the block. Despite having this information, Lewis did not even check the number of the house before instructing the SWAT team to execute the warrant on the Jimersons' home—separated from the target

---

[1] It's worth noting that one of our colleagues recently suggested that "the Supreme Court's original justification for qualified immunity—that Congress wouldn't have abrogated common-law immunities absent explicit language—is faulty because the 1871 Civil Rights Act *expressly included such language.*" *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) (Willett, J., concurring); *see also* Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201, 207–08 (2023) (arguing that "the problem with current qualified immunity doctrine is not just that it departs from the common law immunity that existed when Section 1983 was enacted," but also that "no qualified immunity doctrine at all should apply in Section 1983 actions, if courts stay true to the text adopted by the enacting Congress and other evidence of legislative intent").

No. 22-10441

house by more than one[2] residence—by deploying a flash bang, breaking all their front windows using the "break and rake" technique, and forcing open the front door. Lewis wrote in an incident report that he "believed" the numbers on the Jimersons' home to be that of the target house, despite the fact that he admitted his view was obscured because the Jimersons "had a brightly glowing porch light directly above them that was causing a reflection on the siding of the house." Regardless of Lewis' ability to see the numbers on the home, the search warrant alerted him that the target house number was written on the curb in front of the house and on a wooden pole supporting the house—not on the front of the house like at the Jimerson residence. Even more glaring are the notable physical distinctions between the two houses: while there is a prominent wheelchair ramp that protrudes from the Jimerson house with railings that appear to be waist-high, the target house had no such ramp and featured a chain-link fence around the perimeter of the property— differences evident from the photographs of the target house provided to Lewis before the execution of the warrant.

Though it is undisputed that Lewis violated the Jimersons' Fourth Amendment rights in executing a SWAT-style entry into their home without a warrant, the majority finds that the Jimersons' claim fails because the unlawfulness of Lewis' actions were not clearly established law.[3] Specifically,

---

[2] As the majority opinion acknowledges, the SWAT team initially assembled on the front porch of the wrong house. After Lewis recognized that the SWAT team was at the wrong house, he instructed the SWAT team to execute the warrant on the Jimerson residence, which was in the *opposite* direction of the target residence.

[3] We have sometimes described the second prong of the qualified immunity analysis as an inquiry into whether an official's "actions were objectively unreasonable in light of clearly established law." *See, e.g., Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) (Willett, J.). The different phrasing is of no moment because, of course, violating a clearly established right *is* objectively unreasonable. *See Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017); *see also Anderson v. Creighton*, 483 U.S. 635, 653 (1987) ("Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established

the majority concludes that there is not enough legal authority supporting the Jimersons' contention that Lewis' efforts to locate the target residence were constitutionally deficient. While the majority is certainly correct that "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), they nonetheless unfairly limit the legal authority the Jimersons may rely on in rebutting Lewis' assertion of qualified immunity. The "focus" of the qualified immunity analysis is whether the officer had "fair notice" that his conduct was unlawful, and here the clearly established law gave Lewis ample warning of the constitutionally sufficient efforts required to ensure he directed the SWAT team to the correct residence. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (noting that the "focus" of qualified immunity analysis is "whether the officer had fair notice that her conduct was unlawful").

Contrary to the majority's assertion that there is no clearly established law that would have put Lewis on notice of the unlawfulness of his actions, the Supreme Court has stated that officers must make "a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." *Maryland v. Garrison*, 480 U.S. 79, 88 (1987). In *Garrison*, officers mistakenly executed a search warrant on the wrong apartment because they believed that the third floor of an apartment complex contained only one rather than two apartments. *Id.* There, the Supreme Court found that the officers made a reasonable effort to identify the correct apartment because "[t]he objective facts available to the officers at the time suggested no distinction between McWebb's apartment and the third-floor premises." *Id.* Specifically, those officers made a "reasonable effort" to

---

law[.]"); *Horvath v. City of Leander*, 946 F.3d 787, 800 (5th Cir. 2020) (Ho, J., concurring) (quoting *Pearson v. Callahan*, 555 U.S. 222, 232 (2009)).

identify the target residence where they: (1) went to the premises to see if it matched the description given by an informant; (2) checked with the Baltimore Gas and Electric Company to ascertain in whose name the third floor apartment was listed; and (3) checked with the Baltimore Police Department to make sure that the description and address of the suspect matched the information provided by the informant. *Id.* at 81–82, 85–86 n.10.

Moreover, *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995) "aptly illustrates the established right" at issue in the Jimersons' claim against Lewis. *See id.* at 955 (recognizing as "clearly established law" that "absent probable cause and exigent circumstances, a warrantless search of a residence violates the Fourth Amendment, unless the officers engage in reasonable efforts to avoid error"); *see also Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016) (explaining that where a case "does not constitute clearly established law for purposes of QI" it may still "aptly illustrates the established right"). In *Hartsfield*, the Eleventh Circuit denied qualified immunity where an officer "had the warrant in his possession" yet "did not check to make sure he was leading the other officers to the correct address" *Hartsfield*, 50 F.3d at 955. There, the officers' efforts to identify the target of the search warrant were insufficient where: (1) the numbers were clearly marked on the houses; (2) the houses were separated by at least one other residence; and (3) the houses were physically distinguishable; (4) there were no exigent circumstances; and (5) the raid occurred during the daytime. *Id.* at 952–55. Here, similarly, the numbers on the houses were clearly marked (despite it being nighttime), the houses were separated by at least one residence and were physically distinguishable, and there were no exigent circumstances. While Lewis arguably did more to identify the correct residence than the officer in *Hartsfield*, who "did nothing to make sure he was leading the officers to the correct residence," Lewis nonetheless could have easily avoided the mistaken entry by "simply checking" the house number or using

other information at his disposal to identify the correct residence. *Id.* at 955. In light of *Hartsfield*'s guidance interpreting the clearly established law in *Garrison*, the Jimersons rebutted Lewis' assertion of qualified immunity.

Our unpublished decision in *Rogers v. Hooper*, 271 F. App'x 431 (5th Cir. 2008) also supports the denial of qualified immunity to Lewis. In *Rogers*, we affirmed a grant of qualified immunity to an officer who mistakenly led his team to the wrong house where: (1) the two houses were next to each other; (2) the officer had previously been at the correct house twice; and (3) the minor differences between the houses were "less noticeable at night." Here, in contrast, the houses were not next to each other, and Lewis could have easily checked the number of the target house that was painted on the curb and affixed to a wooden beam supporting the home's porch. Moreover, the obvious physical distinctions between the houses would have been noticeable even at night; while the target house had a chain-link fence around it, the Jimerson house did not have any fence and featured a wheelchair ramp with waist-high railings along it. Because Lewis did not take the same steps[4] as the officer in *Rogers* to identify the correct residence, our nonprecedential case law supports the denial of qualified immunity.

In light of the efforts identified as adequate by the Supreme Court in *Garrison* and elaborated on by circuit courts, Lewis had "fair notice" of the minimum efforts required to comply with the Fourth Amendment when

---

[4] Notably, the officers in *Rogers* and *Garrison* each previously visited the correct houses as part of their efforts to identify the target of the search warrant, whereas here Lewis made no such attempts. *See Rogers*, 271 F. App'x at 433–43 (noting that the officers "had been at the correct house at least twice before"); *Garrison*, 480 U.S. at 86 n.10 ("The officer went to [the target residence] and found that it matched the description given by the informant."). WPD Police Chief Wade Goolsby even testified that after this incident, the WPD implemented additional procedures requiring officers to "get[] eyes on the location so that [the officer] not only sees the target, but the surrounding homes" before executing a search warrant.

No. 22-10441

identifying a house for the purposes of executing a search warrant. *Brosseau*, 543 U.S. at 198; *see also Hope v. Pelzer*, 536 U.S. 730, 731 (2002) ("Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."). As announced in *Garrison* and elucidated in *Rogers* and *Hartsfield*, it is "beyond debate" that Lewis' efforts to identify the target house were constitutionally deficient. *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). The panel should affirm the district court's denial of Lewis' assertion of qualified immunity.