# United States Court of Appeals for the Fifth Circuit

**KAREN JIMERSON, ET AL.,**

*Plaintiffs–Appellees,*

*v.*

**MIKE LEWIS, LT.,**

*Defendant–Appellant.*

On appeal from the United States District Court
for the Northern District of Texas,

USDC No. 3:20-CV-2826

## APPELLEES' PETITION FOR REHEARING EN BANC

| | |
|---|---|
| Patrick Jaicomo | Ernest "Skip" Reynolds III |
| *Lead Counsel* | LAW OFFICE OF |
| Jared McClain | ERNEST REYNOLDS III |
| Dylan Moore | 314 Main St., Ste. 202 |
| INSTITUTE FOR JUSTICE | Fort Worth, TX 76102 |
| 901 N. Glebe Rd., Ste. 900 | (817) 332-8850 |
| Arlington, VA 22203 | ereynolds3@aol.com |
| (703) 682-9320 | |
| pjaicomo@ij.org | |

*Counsel for Plaintiffs-Appellees*

# Certificate of Interested Persons

(1)    Fifth Circuit Case No. 22-10441, *Jimerson v. Lewis*.

(2)    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

| Appellees | Counsel for Appellees |
|---|---|
| Karen Jimerson | INSTITUTE FOR JUSTICE |
| James Parks |     Patrick Jaicomo |
| JJ (Minor Child) |     Jared McClain |
| JJ (Minor Child) |     Dylan Moore |
| XP (Minor Child) | |
| | LAW OFFICE OF ERNEST REYNOLDS III |
| |     Ernest "Skip" Reynolds III |

| Appellant | Counsel for Appellant |
|---|---|
| Lt. Mike Lewis | D. RANDALL MONTGOMERY & ASSOCS., PLLC |
| |     D. Randall Montgomery |
| |     Alyssa M. Barreneche |

s/ Patrick Jaicomo
*Lead Counsel for Plaintiffs-Appellees*

## Rule 35(b)(1) Statement

The full Court's consideration is necessary because the published panel decision conflicts with precedent from the Supreme Court, this Circuit, and several other circuits on a question of exceptional importance: Whether an officer violates clearly established law when he searches the wrong house without ascertaining the address or conspicuous features of the house to be searched. The panel held he does not. If an officer takes *some* steps to identify the correct house before executing the warrant, he is entitled to qualified immunity—even if he fails to employ the information learned in taking these steps. Op. 9–11. Dissenting, Judge Dennis disagrees. Op. 12. So, too, do the Supreme Court, earlier panels of this Court, and multiple sister circuits.

This Court should grant en banc review for three reasons:

*First*, the panel decision conflicts with precedent. The Supreme Court clearly established in *Maryland v. Garrison* that an officer executing a search warrant must make "a reasonable effort to ascertain and identify the place intended to be searched[.]" This Court confirmed in *Sampson v. Regional Program* that "the rule of *Garrison*" means an officer is not entitled to qualified immunity if he was "on notice of the risk

that [he] might search the wrong residence" but did so "without making any attempt to more definitively ascertain which was the correct" residence.

*Second*, like *Sampson*, decisions from four other circuits cite *Garrison* for having clearly established that an officer executing a search warrant at the wrong residence violates the Fourth Amendment when, given the facts, he should have known better. So the panel creates a circuit split.

*Third*, the rule is obvious. All reasonable officers—indeed, all reasonable Americans—know that failing to confirm a home's address before entering is unreasonable.

En banc review is appropriate under both Rule 35(b)(1)(A) and (B).

# Table of Contents

Certificate of Interested Persons .............................................i

Rule 35(b)(1) Statement ............................................................ii

Table of Authorities..................................................................v

Statement of Issue....................................................................1

Statement of Proceedings........................................................2

Statement of Facts ...................................................................3

Argument....................................................................................7

    I.    This Court has confirmed *Garrison* clearly established that failures like Lewis's are unconstitutional. ...................................9

    II.   The panel stranded this Court on the wrong side of a circuit split.........................................................................13

    III.  The need to ascertain basic features before entering an unknown house is obvious. ...........................................17

Conclusion ...............................................................................19

Certificate of Service ............................................................21

Certificate of Compliance.....................................................22

# Table of Authorities

## Cases

*Boyd v. McNamara,*
   74 F.4th 662 (5th Cir. 2023) .................................................. 11

*Dawkins v. Graham,*
   50 F.3d 532 (8th Cir. 1995) ............................................. 15, 16

*Florida v. Jardines,*
   569 U.S. 1 (2013) .................................................................. 16

*Gerhart v. Barnes,*
   724 F. App'x 316 (5th Cir. 2018) ........................................ 12

*Gomez v. Feissner,*
   474 F. App'x 53 (3d Cir. 2012) ....................................... 15, 16

*Gonzalez v. Trevino,*
   60 F.4th 906 (5th Cir. 2023) ......................................... 13, 17

*Graham v. Connor,*
   490 U.S. 386 (1989) ............................................................. 19

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ....................................................... 11, 17

*Hartsfield v. Lemacks,*
   50 F.3d 950 (11th Cir. 1995) ................................... 13, 14, 16

*Hope v. Pelzer,*
   536 U.S. 730 (2002) ............................................................. 18

*Horvath v. City of Leander,*
   946 F.3d 787 (5th Cir. 2020) .............................................. 17

*Hunt v. Tomplait,*
   301 F. App'x 355 (5th Cir. 2008) ........................................ 11

*Johnson v. Halstead,*
   916 F.3d 410 (5th Cir. 2019) ................................................ 8

*Joseph ex rel. Est. of Joseph v. Bartlett,*
    981 F.3d 319 (5th Cir. 2020) .......................................... 11, 16

*Malley v. Briggs,*
    475 U.S. 335 (1986) .......................................................... 18

*Maryland v. Garrison,*
    480 U.S. 79 (1987) ................................................. ii, 7, 9, 10

*McCoy v. Alamu,*
    141 S. Ct. 1364 (2021) ..................................................... 18

*Navarro v. Barthel,*
    952 F.2d 331 (9th Cir. 1991) (per curiam) ..................... 15, 16

*Oliver v. Arnold,*
    19 F.4th 843 (5th Cir. 2021) ............................................ 13

*Pray v. City of Sandusky,*
    49 F.3d 1154 (6th Cir. 1995) ........................................... 16

*Rogers v. Hooper,*
    271 F. App'x 431 (5th Cir. 2008) ..................................... 11

*Rogers v. Jarrett,*
    63 F.4th 971 (5th Cir. 2023) ............................................ 17

*Roque v. Harvel,*
    993 F.3d 325 (5th Cir. 2021) ........................................... 18

*Rosales v. Bradshaw,*
    72 F.4th 1145 (10th Cir. 2023) ........................................ 18

*Sampson v. Reg'l Controlled Substance Apprehension Program,*
    48 F.3d 531 (5th Cir. 1995) .................................. ii, 8, 9, 10

*Silverman v. United States,*
    365 U.S. 505 (1961) .......................................................... 18

*Taylor v. Riojas,*
    592 U.S. 7 (2020) .............................................................. 18

*Thomas v. Williams,*
719 F. App'x 346 (5th Cir. 2018)..........................................................12

*Villarreal v. City of Laredo,*
___ F.4th ___, 2024 WL 244359 (5th Cir. Jan. 23, 2024) ....................11

*Wilson v. Layne,*
526 U.S. 603 (1999)............................................................................16

## Other Authorities

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation,*
111 Calif. L. Rev. 201 (2023) ............................................................18

## Rules

5th Cir. R. 47.5.3 ................................................................................8

Fed. R. App. P. 35(b)(1) ...................................................................iii, 13

**Statement of Issue**

Lieutenant Mike Lewis ordered his SWAT team to "break and rake" an innocent family's house in the dead of night, smashing through windows, detonating a flashbang grenade, and kicking down the door with guns drawn. Lewis ordered the no-knock raid even though the clearly displayed address on the house did not match the warrant in Lewis's possession and despite major physical differences between the raided house and his target. For instance, the target house had a front porch, was surrounded by a chain-link fence, and sat in front of a detached garage that a 3-man team planned to search. The raided house lacked these features. Instead, it had a massive wheelchair ramp leading to its front door.

The sole issue on appeal is whether an officer violates clearly established law when he searches the wrong house without ascertaining the address or conspicuous features of the house to be searched.

The panel majority says no. But, as dissenting Judge Dennis explains, this conclusion conflicts with decisions from the Supreme Court, this Circuit, and its sisters. Indeed, the panel decision ignores the obvious: All reasonable officers know that failing to confirm a home's address before entering is unreasonable.

The full Court should reconsider the panel's extension of qualified immunity in this published case.

## Statement of Proceedings

Karen Jimerson, James Parks, and their three minor children sued the officers who raided their home. Op. 4–5. The officers moved for summary judgment based on qualified immunity, and the district court granted it—except as to Lewis. Relying on an unpublished Fifth Circuit decision and a published decision from the Eleventh Circuit, the district court found "a genuine dispute of material fact regarding whether [Lewis] made the necessary reasonable effort to identify the correct residence" before ordering the raid. Op. 5.

Lewis immediately appealed, and the panel reversed in a 2-1 decision. After noting that there were no disputes of material fact and that Lewis did "not challenge the district court's analysis of whether [he] violated the plaintiffs' rights under federal law," Op. 6–7, the majority concluded that Lewis was entitled to qualified immunity because the law he violated was not clearly established. Characterizing the Supreme Court's holding in *Garrison* as a statement of "general principle," the majority rejected the district court's reliance on persuasive authority. Op. 8–11.

"Even if these two nonprecedential opinions were indicative of clearly established law," the panel concluded, they did not provide Lewis "fair warning" because he did more than "nothing" to identify the correct house. Op. 10. Thus, although Lewis conceded that he violated the Jimersons' Fourth Amendment rights, the panel concluded he was immune.

Judge Dennis dissented. While he agreed that there were no disputed facts, he would have denied Lewis qualified immunity. In Judge Dennis's view, decisions from the Supreme Court, Fifth Circuit, and Eleventh Circuit all provided Lewis "'fair notice' of the minimum efforts required to comply with the Fourth Amendment when identifying a house for the purposes of executing a search warrant[,]" but Lewis failed to make those minimum efforts. Op. 16–17. Lewis "could have easily avoided the mistaken entry by 'simply checking' the house number or using other information at his disposal to identify the correct residence." Op. 15–16.

## Statement of Facts

Under Lewis's direction, the Waxahachie, Texas SWAT Team gathered to execute a no-knock warrant on a suspected meth stash house located at 573 8th Street, Lancaster, Texas. The team assembled on the

porch of 5<u>8</u>3 8th Street, however, before Lewis realized they were at the wrong address. The house to the officers' *right* was the target house. But Lewis commanded his officers to raid the home to their *left*, 5<u>9</u>3 8th Street, in which the Jimersons were preparing for bed. Op. 3–4.

Lewis should have known the Jimerson house was not the target. The target house was under surveillance, and Lewis received real-time intelligence. He also had a copy of the search warrant, listing the target address as 5<u>7</u>3. This did not match the 5<u>9</u>3 on the Jimerson house. Op. 4. Although he later claimed that he "believed" the Jimersons' address matched the warrant, Lewis conceded he "did not even check the number[.]" Op. 12 (dissent).

Even worse, several notable features should have alerted Lewis that his team was—for the second time—at the wrong house. Lewis knew, for instance, the target house had its address painted on the curb and affixed to a pole supporting its porch; the Jimerson house had its address affixed to the house itself and had no porch. Lewis knew the target house was the thirteenth on the block; the Jimerson house was the fifteenth. And Lewis knew the target house had a perimeter fence; the

Jimerson house had no fence but sported a large wheelchair ramp leading to the front door. Op. 12–13.

Even a cursory glance at the grainy, black-and-white, Xerox-scanned photos taken the night of the raid reveals several obvious differences, including the Jimersons' impossible-to-miss wheelchair ramp:

*The Target House:*



*The Jimerson House:*



ROA.1830–1831.

Despite these facts, Lewis inexplicably commanded officers to "break and rake" the Jimerson house. On Lewis's orders, the SWAT team moved from one wrong house to another, clambered up a wheelchair ramp, broke down the Jimersons' front door, shattered their windows, and detonated a flashbang grenade. Glass from the windows rained on the children as they slept, cutting one. The officers then held the family—a half-naked Karen, emerging from a shower; James, who had been asleep; and their minor children—at gunpoint until another officer realized Lewis's mistake. Op. 4.

In the wake of the botched raid, an internal investigation concluded Lewis "completely overlooked" his department's "reasonable and normal protocol." The Police Chief stated that mistakes like Lewis's should never happen and suspended him without pay. Op. 4.

Still, the panel majority concluded Lewis is immune from liability. Although Lewis concedes he violated the Fourth Amendment, the panel found "he made significant efforts to identify the correct residence[.]" Op. 10. These efforts—which almost all occurred before Lewis was on the scene—included reviewing the warrant, searching a website, speaking with DEA agents, and briefly looking at the Jimersons' house before ordering officers to storm it. *Id.* But because of these efforts, the panel concluded, "the violative nature of [Lewis's] *particular* conduct [was not] clearly established." Therefore, Lewis did not have "fair warning" and is immune. Op. 10–11 (citations omitted).

## Argument

This Court should grant en banc review for three reasons:

*First*, the panel decision conflicts with two precedential decisions: (1) *Maryland v. Garrison*, 480 U.S. 79, 88 (1987), where the Supreme Court explained that officers must make "a reasonable effort to ascertain

and identify the place intended to be searched"; and (2) *Sampson v. Regional Controlled Substance Apprehension Program*, 48 F.3d 531 (5th Cir. 1995) (summary calendar opinion),[1] where this Court explained that the "rule of *Garrison*" precludes qualified immunity when officers are "on notice of the risk that they might search the wrong residence."

*Second*, the decision splits this Court from multiple sister circuits that have, citing *Garrison*, denied qualified immunity in similar circumstances.

*Third*, Lewis's decision to order the raid was obviously unconstitutional. All adults know they cannot waltz into a stranger's house without confirming it's the one they have permission to enter.

Unless the full Court intervenes, the panel opinion will leave the Fifth Circuit in conflict with binding precedent, strand this Court on the wrong side of a circuit split, and diminish the Fourth Amendment rights of millions.

---

[1] "Unpublished opinions issued before January 1, 1996, are precedent." 5th Cir. R. 47.5.3; *see also Johnson v. Halstead*, 916 F.3d 410, 417 n.2 (5th Cir. 2019).

**I.    This Court has confirmed *Garrison* clearly established that failures like Lewis's are unconstitutional.**

Binding authority from the Supreme Court and this Court clearly established that Lewis's actions were unconstitutional, and the great weight of this Court's persuasive authority reinforces that conclusion.

**1.** In *Maryland v. Garrison*, the Supreme Court explained that officers executing a warrant must make "a reasonable effort to ascertain and identify the place intended to be searched[.]" 480 U.S. at 88. There, officers entered the wrong apartment because they mistakenly believed that the third floor contained a single unit, rather than two. *Id.* Although the officers made several attempts to identify the target apartment, none revealed that the third floor had two apartments. *Id.* Because "[t]he objective facts available to the officers at the time suggested no distinction between" the dwellings, the search complied with the Fourth Amendment. *Id.* If the officers "*should* have known that the third floor contained two apartments[,]" however, the search of the wrong dwelling would have been unconstitutional. *Id.* at 86 (emphasis added).

This Court has explained how the "rule of *Garrison*" applies in the Fifth Circuit. *Sampson*, 48 F.3d 531, at *3. In *Sampson*, the Court denied qualified immunity to officers who executed a warrant at the wrong

apartment, despite discovering two apartments in the building once they arrived. *Id.* Because the officers were "on notice of the risk that they might search the wrong residence[,]" their failure to "mak[e] any attempt to more definitively ascertain which was the correct apartment" before they "busted in[]" violated clearly established law. *Id.*

*Garrison* and *Sampson* clearly establish Lewis violated the Jimersons' constitutional rights. In *Garrison*, the officers made reasonable, though unsuccessful, efforts to identify the target apartment. Here, however, the target house was plainly visible from the street. And although the panel highlighted *some* steps Lewis took to identify the target house before arriving on the scene, Op. 10, it ignored the fact that Lewis failed to employ this knowledge while executing the warrant. Unlike in *Garrison*, Lewis's investigation left no doubt about which house he could search—the one that had the same address as the warrant, a detached garage, a fence, and no wheelchair ramp.

*Sampson*'s facts are even more analogous.[2] Lewis knew the warrant authorized officers to search 5_7_3 8th Street. He knew what the target

_____

[2] This Court has "often explained" that "the law can be clearly established despite notable factual distinctions" so long as "the prior decisions gave

house looked like. Thus, as soon as Lewis realized the officers mistakenly gathered at 5<u>8</u>3 8th Street (one house away), he was "on notice of the risk that they might search the wrong residence." At that point, any reasonable officer would have taken a moment to ensure that he redirected the SWAT team to the correct house.[3] Instead, Lewis hastily ordered the officers to raid the Jimerson house at 5<u>9</u>3 8th Street without confirming the address or noticing the obvious physical differences.[4]

**2.** As Judge Dennis suggests, Op. 16, the weight of unpublished caselaw further supports denying immunity.[5] *See Rogers v. Hooper*, 271 F. App'x 431, 435 (5th Cir. 2008) (granting immunity because the houses were next to each other and minor differences were "less noticeable at night"); *see also Hunt v. Tomplait*, 301 F. App'x 355, 362 (5th Cir. 2008)

_____

reasonable warning that the conduct then at issue violated constitutional rights." *Boyd v. McNamara*, 74 F.4th 662, 669 (5th Cir. 2023) (cleaned up).

[3] *See Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) ("Where an official could be expected to know that certain conduct would violate . . . constitutional rights, he should be made to hesitate[.]").

[4] That Lewis had time to deliberate alternatively counsels against qualified immunity. *See Villarreal v. City of Laredo*, ___ F.4th ___, 2024 WL 244359, at *22 (5th Cir. Jan. 23, 2024) (Willett, J., dissenting).

[5] Unpublished opinions can illustrate the contours of clearly established law. *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 341 n.105 (5th Cir. 2020).

(denying immunity because officer ordered search without checking the warrant); *Gerhart v. Barnes*, 724 F. App'x 316, 325 (5th Cir. 2018) (denying immunity because officers failed to read the warrant, the raided house was two houses down from the target, the houses looked different, and the raid occurred during the day).

These cases confirm Lewis violated clearly established law. The Jimerson house was two doors down from the target house. To raid it, the SWAT team had to ascend a large wheelchair ramp that was not supposed to be there. The target house was the thirteenth on the block, while the Jimersons' was the fifteenth. The houses displayed their addresses in different places. And—perhaps most importantly—"Lewis could have easily avoided the mistaken entry by 'simply checking' the house number[.]" Op. 15 (dissent).

One unpublished decision from this Court, *Thomas v. Williams*, granted qualified immunity to an officer who searched the wrong house despite knowing the address did not match the warrant. 719 F. App'x 346, 351–52 (5th Cir. 2018). *Thomas* was wrongly decided because it conflicts with *Garrison* and *Sampson. See id.* at 356 (Dennis, J., dissenting).

In any event, *Thomas* compounds the intra-circuit confusion necessitating en banc review.

The majority's view that Lewis is immune because he did more than nothing is inconsistent with *Garrison*, *Sampson*, and the great weight of this Court's persuasive authority. Without en banc intervention, this Court risks "getting qualified immunity backwards." *Gonzalez v. Trevino*, 60 F.4th 906, 912 (5th Cir. 2023) (Ho., J, dissental).

## II. The panel stranded this Court on the wrong side of a circuit split.

The panel's decision also conflicts with decisions from four sister circuits—the Third, Eighth, Ninth, and Eleventh. This split confirms that the issue presented is one of exceptional importance. Fed. R. App. P. 35(b)(1)(B). *See also Oliver v. Arnold*, 19 F.4th 843, 860 (5th Cir. 2021) (Duncan, J., dissental) ("A core function of en banc review is to address such circuit splits.").

As Judge Dennis observed, Op. 15–16, the panel decision splits this Court from the Eleventh Circuit's opinion in *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995). There, an officer "had the warrant in his possession" but "did not check to make sure he was leading the other officers to the correct address." *Id.* at 955. At the officer's command, police raided

51_2_8 Middlebrooks Drive, rather than 51_0_8. *Id.* at 951–52. Just as here, the correct house was at least two doors down, the house numbers were clearly marked, and only one house had a fence around it. *Id.* In denying qualified immunity, the Eleventh Circuit explained that *Garrison* clearly established "that, absent probable cause and exigent circumstances, a warrantless search of a residence violates the Fourth Amendment, unless the officers engage in reasonable efforts to avoid error." *Id.* at 955. The officer's failure to recognize the obvious differences between the houses—paired with his failure to verify the address—violated this clearly established law.[6] *Id.*

The Eleventh Circuit is not alone. The Eighth Circuit held that, under *Garrison*, it was clearly established that "the execution of a valid warrant on the wrong premises violates the Fourth Amendment if the officers should know the premises searched are not the premises described in

---

[6] The panel attempts to reconcile its holding with *Hartsfield* by claiming that Lewis "was far more careful" than the officer there. Op. 10. But in both cases, the officers "could have easily avoided the mistaken entry by 'simply checking' the house number or using other information at [their] disposal to identify the correct residence." Op. 15–16 (dissent) (quoting *Hartsfield*, 50 F.3d at 955). Despite Lewis's pre-search investigation, he failed to employ the information he learned about the target residence when it came time to confirm the place to be searched.

the warrant[.]" *Dawkins v. Graham*, 50 F.3d 532, 534 (8th Cir. 1995). Under this standard, the court denied qualified immunity when officers entered "611 Adam Street" instead of "611 Byrd Street" (one block away) because the houses were different colors and the streets were clearly marked. *Id.*

The Ninth Circuit found that *Garrison* clearly established that an officer must "act[] reasonably, based on information about the . . . premises that he knew or should have known, to assure that the wrong place was not searched." *Navarro v. Barthel*, 952 F.2d 331, 333 (9th Cir. 1991) (per curiam). In *Navarro*, a warrant authorized the search of "the second house on the right," but an officer directed others to search the wrong house. *Id.* When the homeowners sued, the court held that qualified immunity did not shield the officer. *Id.*

And, also citing *Garrison*, the Third Circuit concluded (in an unpublished decision) that "there is a clearly established right to be free from a search of one's home by officers who . . . should know that such a search is unauthorized." *Gomez v. Feissner*, 474 F. App'x 53, 56 (3d Cir. 2012).

These decisions reflect a circuit consensus. *See Wilson v. Layne*, 526 U.S. 603, 617 (1999). This consensus follows from *Garrison* having clearly established that a wrong-house raid violates the Fourth Amendment when an officer fails to ascertain the address or conspicuous features of the house to be searched. *Hartsfield*, 50 F.3d at 955–56 (11th Cir., citing *Garrison*); *Navarro*, 952 F.2d at 332–33 (9th Cir., same); *Dawkins*, 50 F.3d at 534 (8th Cir., same); *Gomez*, 474 F. App'x at 56 (3d Cir., same).[7] Thus, even were this group insufficient to establish a "robust" consensus, these decisions—like unpublished Fifth Circuit decisions—"illustrate" the "clearly established law" of *Garrison*. *See Joseph*, 981 F.3d at 341 n.105.

If left undisturbed, the panel opinion strands this Court on the wrong side of a circuit split. "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). Yet only in the Fifth Circuit will innocent people like the Jimersons have no recourse against the most intrusive home searches. The full Court

---

[7] *But see Pray v. City of Sandusky,* 49 F.3d 1154, 1156, 1159 (6th Cir. 1995) (granting qualified immunity to officers who conducted a wrong-duplex raid when they had to make a "quick judgment" and "[n]either door . . . was identified" in the vestibule). *Pray* did not cite *Garrison* in its forcible-entry analysis.

should take this case to ensure that the Fourth Amendment "is not reduced to a parchment promise" in this Circuit. *Gonzalez*, 60 F.4th at 907 (Ho, J., dissental).

### III. The need to ascertain basic features before entering an unknown house is obvious.

Even if this body of caselaw did not clearly establish the constitutional violation Lewis concedes he committed, Lewis's violation was obvious. Everyone (including plumbers, prospective home buyers, and pizza delivery drivers) knows you have to confirm some basic facts before entering a house for the first time—chief among these is checking that you've arrived at the correct address.

The Supreme Court conceived qualified immunity to shield government officials from liability if their actions did not violate "clearly established . . . rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.[8] So immunity is available to neither "the plainly

---

[8] Members of this Court have repeatedly pointed out qualified immunity's flawed foundations. *See, e.g.*, *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) (Willett, J., concurring) ("[T]he Supreme Court's original justification for qualified immunity . . . is faulty[.]"); *Horvath v. City of Leander*, 946 F.3d 787, 800 (5th Cir. 2020) (Ho., J., concurring in part and dissenting in part) ("The 'clearly established' requirement . . . lacks any basis in the text or original understanding of § 1983"); *see also* Alexander A.

incompetent," "those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), nor those who commit obvious constitutional violations, *Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002).

Applying these principles, the Supreme Court summarily reversed this Court twice in recent years for granting qualified immunity for obvious constitutional violations. First, in *Taylor v. Riojas*, the Court held that forcing a prisoner to sleep in a freezing cell overflowing with excrement was obviously unconstitutional. 592 U.S. 7, 7–10 (2020) (per curiam). Then, in *McCoy v. Alamu*, the Court ruled it was obvious an official cannot pepper-spray a prisoner for no reason. 141 S. Ct. 1364 (2021).

The unconstitutionality of Lewis's actions is obvious, too—especially in the face of general Fourth Amendment principles. *See Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021); *see also Rosales v. Bradshaw*, 72 F.4th 1145, 1156–57 (10th Cir. 2023). The Supreme Court has long held that the core of the Fourth Amendment protects "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961).

---

Reinert, *Qualified Immunity's Flawed Foundation*, 111 Calif. L. Rev. 201, 207–08 (2023) (explaining that qualified immunity contravenes the original text of Section 1983).

When an officer has detailed information describing the place to be searched—including photos and an address—but fails to confirm that information before searching the wrong house, he obviously violates the Fourth Amendment.

This conclusion does not require 20/20 hindsight. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). An UberEats driver would be expected to do more before dropping off a bag of Chinese food than Lewis did before launching a no-knock SWAT raid. His team having already approached the wrong house, Lewis quickly glanced to his left, glanced to his right, and guessed. He "did not even check the number" before ordering police to storm an innocent family's home. Op. 12 (dissent). The sheer obviousness of Lewis's unconstitutional conduct should be fatal to his claim of qualified immunity.

## Conclusion

The petition for rehearing en banc should be granted.

March 7, 2024

Respectfully submitted,

s/ Patrick Jaicomo

Patrick Jaicomo
   *Lead Counsel*
Jared McClain
Dylan Moore
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
(703) 682-9320
pjaicomo@ij.org
jmcclain@ij.org
dmoore@ij.org

Ernest "Skip" Reynolds III
LAW OFFICE OF
ERNEST REYNOLDS III
314 Main St., Ste. 202
Fort Worth, TX 76102
(817) 332-8850
ereynolds3@aol.com

*Counsel for Plaintiffs-Appellees*

## Certificate of Service

I certify that on March 7, 2024, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished on all counsel of record by the appellate CM/ECF system.

s/ Patrick Jaicomo
*Lead Counsel for Plaintiffs-Appellees*

## Certificate of Compliance

1. This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 35(b)(2) and Fifth Circuit Rule 35.5 because this brief contains 3899 words, as determined by the word-count function of Microsoft Word for Microsoft 365 MSO (Version 2401), excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief is written in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Word for Microsoft 365 MSO (Version 2401).

s/ Patrick Jaicomo
*Lead Counsel for Plaintiffs-Appellees*

Revised February 15, 2024

# United States Court of Appeals for the Fifth Circuit

No. 22-10441

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2024

Lyle W. Cayce
Clerk

Karen Jimerson; JJ; JJ; XP; JP,

*Plaintiffs—Appellees,*

*versus*

Mike Lewis, Lt,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2826

Before Stewart, Dennis, and Southwick, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

A search warrant showed the correct address for the target house, but police officers executed the warrant at an incorrect address. The homeowner brought suit against the officers under Section 1983. When denying summary judgment on the issue of qualified immunity for the officer who led the search, the district court held that fact questions prevented deciding the issue. We find no genuine disputes of material fact. The disputed issue is one of law. We conclude that this officer's efforts to identify the correct

residence, though deficient, did not violate clearly established law. REVERSED and REMANDED for dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2019, at approximately 7:15 p.m., Waxahachie Police Department ("WPD") SWAT Team Commander Mike Lewis received a call from a Drug Enforcement Administration ("DEA") officer. The DEA officer needed assistance executing a search warrant that night on a suspected methamphetamine "stash" house located at 573 8th Street, Lancaster, Texas ("target house"). The officer provided Commander Lewis with information about a drug deal involving the target house. Lewis requested further information, including pictures of the target house, whether "the location was fortified," whether "it appeared to have surveillance equipment," and whether "there were any exterior indicators on the property that children may be present." He also "requested identifying information on the [methamphetamine] seller, as well as prior law enforcement history at that address" involving the Lancaster Police Department ("LPD").

In response, Lewis received pictures showing the front of the house and was told there was "surveillance established at the location." DEA agents told Lewis that they saw no fortification or surveillance cameras at the property or any evidence of children. The agents had no description of the people occupying the target house.

Lewis entered the information into the WPD SWAT's risk analysis assessment worksheet, which scored the incident within the range for "optional SWAT deployment." Consequently, Lewis contacted the WPD Chief and received approval to activate the SWAT team. He also gathered information on the target house from the Dallas Central Appraisal District website, including that the house was 744 square feet, was built in 1952, and had a "large, deeply extending backyard."

No. 22-10441

Lewis then briefed SWAT officers at the WPD. The group decided to have a six-member team enter the target house and a three-member team enter the detached garage and backyard. Thereafter, Lewis received "real-time intelligence that surveillance officers at the scene reported a truck pulling a white box trailer [had] pulled up in front of the target location."[1] When Lewis received a copy of the warrant, he confirmed the address of the target house. The officers then finalized their preparations. LPD Officer Zachary Beauchamp led the SWAT team to the target house. Beauchamp was followed by the SWAT team vehicle, then Lewis in his marked patrol unit, then the Waxahachie K9, and then several unmarked DEA vehicles. Beauchamp was directed "to stop about a house before the target location, so SWAT officers could make an approach on foot."

When they arrived at the area, the SWAT team vehicle's driver saw Beauchamp's vehicle stop abruptly, "causing him to believe [Beauchamp] may have driven too far and stopped them too close to the target location." As the officers exited their vehicles, Beauchamp pointed to the house with the truck and white trailer in front of it, and officers began their approach. As the SWAT team began gathering on the front porch, however, Lewis realized that the house did not look like the house from intelligence photos. The SWAT team had assembled at 583 8th Street, not at the target house at 573 8th Street.

When Lewis looked one house to the left, he decided the layout of the front of that house matched the one in the intel photos. Lewis noticed that "[f]rom left to right, it had one large window, followed by the front entry door, followed by a small window and then [four] larger windows." He also

_____

[1] The record indicates that this intelligence was not accurate. Later investigation revealed that the white trailer was in front of 583 8th Street — not the target house.

noticed that "[t]he driveway was . . . on the left side of the property," and he believed numbers on the front of the house read "573," though the porch light obscured his view. This house, it turns out, was *also* the wrong house. The house Lewis identified was 593 8th Street, two doors down from the target house.

Nevertheless, Lewis told the team that they were at the wrong house and instructed them to "go to the house just to the left of the house where they were." That house was the home of plaintiffs Karen Jimerson, James Parks, and their two young sons and daughter. Officers ran to the front of the plaintiffs' house, deployed a flashbang, broke the front windows, and breached the door. The officers began a protective sweep and checked for occupants. They "encountered two females" whom they told to get on the ground. The officers then encountered an adult male, but before they could direct him to get down, SWAT team members yelled "Wrong House!"

The SWAT team left the plaintiffs' home and proceeded to the target house. After the target house was secured, Lewis returned to the plaintiffs' house, where he joined other DEA agents who were already checking on the plaintiffs' welfare. Plaintiff Karen Jimerson reported some pain in her side. Lewis called an ambulance and she was taken to the hospital. Lewis also coordinated with a glass company to make repairs and remained on the scene until 1:30 a.m.

A WPD internal investigation determined that "reasonable and normal protocol was completely overlooked" and the WPD Chief of Police stated that these kinds of mistakes should not happen. Lewis was suspended for two days without pay.

In September 2020, the plaintiffs brought this action under 42 U.S.C. § 1983. They alleged violations of the Fourth Amendment and several state laws against 20 John Doe defendants. They later amended their complaint,

naming each of the individuals in the WPD SWAT team who executed the warrant, including Lewis. Shortly thereafter, the plaintiffs' state-law tort claims were dismissed. The defendants moved for summary judgment based on qualified immunity, and the matter was referred to a magistrate judge for pretrial management.

The magistrate judge recommended the district court grant qualified immunity to all the officers, whether they entered the house or not. The magistrate judge also concluded the plaintiffs failed to show that Lewis did not make reasonable efforts to identify the target house.

The district court agreed with the magistrate judge's analysis on qualified immunity except with respect to whether Lewis made reasonable efforts to identify the target house. The court found "a genuine dispute of material fact regarding whether [Lewis] made the necessary reasonable effort to identify the correct residence and whether his actions were '[in]consistent with a reasonable effort to ascertain and identify the place intended to be searched,'" quoting *Maryland v. Garrison*, 480 U.S. 79, 88 (1987). The court denied Lewis qualified immunity. Lewis timely appealed.

## DISCUSSION

Federal and state officials may be entitled to qualified immunity from claims for money damages for their actions. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). To overcome this defense, a plaintiff needs to plead plausible facts "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

If the district court denies qualified immunity either on a motion to dismiss or on summary judgment, the defendant official may immediately appeal under the collateral order doctrine. *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996). Here, summary judgment was denied, and our review is *de novo*.

*Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020). Review is limited to considering issues of law, including the legal significance of factual disputes identified by the district court. *Id.* at 331. That means "we may evaluate whether a factual dispute is *material* (*i.e.*, legally significant), but we may not evaluate whether it is *genuine* (*i.e.*, exists)." *Id.* (emphasis in original). "Because the plaintiff is the non-moving party, we construe all facts and inferences in the light most favorable to the plaintiff." *Melton*, 875 F.3d at 261.

As a preliminary matter, Lewis argues the plaintiffs failed to plead and argue that his efforts to identify the correct house were unreasonable. A plaintiff seeking to overcome qualified immunity "must specifically identify each defendant's personal involvement in the alleged wrongdoing." *Thomas v. Humfield*, 32 F.3d 566, 1994 WL 442484, at \*5 (5th Cir. 1994). The plaintiffs complied with the need for specificity by alleging in the complaint that Lewis "was the person in charge" of the mistaken raid on their home, and in their summary judgment arguments that Lewis was the "overall leader of [the] misconduct" and that he overlooked "reasonable and normal protocol."

As to the merits, Lewis does not challenge the district court's analysis of whether defendants violated the plaintiffs' rights under federal law. The Fourth Amendment provides that individuals have a right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Supreme Court has held that officers must make "reasonable effort[s] to ascertain and identify the place intended to be searched" in order to comply with the Fourth Amendment. *Garrison*, 480 U.S. at 88. To be clear about an occasional irrelevant addition to the proper analysis, we do not consider whether the officer's actions were "objectively unreasonable." That quoted standard is a "vestige of older caselaw that predates the Supreme Court's current test." *Parker v. LeBlanc*,

73 F.4th 400, 406 n.1 (5th Cir. 2023).  In another precedential rejection of an
"objectively unreasonable" component of qualified immunity, we held there
is no "standalone 'objective reasonableness' element to the Supreme
Court's two-pronged test for qualified immunity." *Baker v. Coburn*, 68 F.4th
240, 251 n.10 (5th Cir. 2023).

We evaluate the reasonableness of Lewis's actions because the
plaintiffs' claims arise under the Fourth Amendment.  The district court
denied qualified immunity because the court found a "genuine dispute of
material fact regarding whether [Lewis] made the necessary reasonable
efforts to identify the correct residence."  As we stated earlier, we cannot
review a district court's determination that a factual dispute is genuine.
*Bartlett*, 981 F.3d at 331.  We are to decide, though, legal significance, *i.e.*,
whether disputed facts are material to resolution of the case.  *Id.*

The district court did not find evidentiary disputes about what Lewis
and others did before entering the incorrect house.  The court stated that the
central dispute was whether those actions constituted "necessary reasonable
efforts."  Certainly, unlike here, exactly what an officer did may sometimes
be factually unclear.  A court's determination of reasonableness under the
Fourth Amendment, though, "'is predominantly an objective inquiry.'"  *al-
Kidd*, 563 U.S. at 736 (quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 47
(2000)).  The circumstances are to be "viewed objectively" and a
determination made of whether they "justify" the search.  *Id.* (quoting *Scott
v. United States*, 436 U.S. 128, 138 (1978)).

Consequently, as a legal issue for our *de novo* review, we consider
whether Lewis's conduct violated clearly established law.  *See id.* at 325–26.
Clearly established law is determined by reference to "controlling
authority[,] or a robust consensus of persuasive authority."  *Delaughter v.
Woodall*, 909 F.3d 130, 139 (5th Cir. 2018) (citation omitted).  The keystone

in this analysis is fair warning. *Id.* at 139–40. To overcome qualified immunity, plaintiffs must cite "a body of relevant case law [] in which an officer acting under similar circumstances . . . was held to have violated" a defendant's constitutional rights. *Bartlett*, 981 F.3d at 330 (quotation marks and citations omitted). "While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Id.* (quoting *al–Kidd*, 563 U.S. at 741).

Compliance with the Fourth Amendment requires a law enforcement officer's "reasonable effort[s] to ascertain and identify the place intended to be searched." *Garrison*, 480 U.S. at 88. In applying that general principle, the district court relied on two opinions. One was a nonprecedential opinion of this court. *Rogers v. Hooper*, 271 F. App'x 431 (5th Cir. 2008). The other was nonprecedential in the Fifth Circuit because it was issued by a different circuit court of appeals. *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995).[2] The plaintiffs do not cite any other authority.

In *Rogers*, we affirmed a grant of qualified immunity. *Rogers*, 271 F. App'x at 436. Officers secured a warrant to search a suspected drug house. *Id.* at 432. Before executing the warrant, officers drove by the target house to confirm its location. *Id.* They saw a maroon vehicle parked in front of the

---

[2] A nonprecedential opinion "cannot be the source of clearly established law for qualified immunity analysis." *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019). Nevertheless, such opinions may be used to illustrate clearly established law. *Bartlett*, 981 F.3d at 341 n.105; *see also Cooper v. Brown*, 844 F.3d 517, 525 n.8 (5th Cir. 2016). As for *Hartsfield*, "[w]e have not previously identified the level of out-of-circuit consensus necessary to put the relevant question 'beyond debate'" and to constitute clearly established law. *Morrow v. Meachum*, 917 F.3d 870, 879 (5th Cir. 2019) (quoting *al-Kidd*, 563 U.S. at 741). It is unlikely that one out-of-circuit case is sufficient.

target house. *Id.* The officers then briefed their team on the location of the home and developed a plan for executing the warrant. *Id.* The night of the warrant's execution, however, the maroon vehicle was parked in front of the house next door to the target house. *Id.* Officers broke into that house before ultimately realizing their mistake. *Id.*

We emphasized that the officers made several efforts to identify the correct residence, including conducting "initial surveillance of the house shortly before the warrant was executed, though [the officers] increased the chance for mistake by approaching the house in the opposite direction than they would use later." *Id.* at 435. There were differences in appearance between the mistaken house and target house, but "those differences were less noticeable at night." *Id.* Further, we acknowledged the confusion that arose from the fact that "a car that earlier had been thought to be in front of the house to be searched was instead in front of the [p]laintiffs' home when the search began." *Id.* "[T]he officers made reasonable efforts, though obviously insufficient ones, to identify the correct house." *Id.*

In *Hartsfield*, the Eleventh Circuit determined that an officer was not entitled to qualified immunity when he executed a warrant at the wrong residence. 50 F.3d at 956. The officer had been to the proper residence the day before. *Id.* at 951. On the day of the raid, though, he did little to ensure he was leading officers to the correct address:

> As it is uncontroverted that the numbers on the houses are clearly marked, and that the raid took place during daylight hours, simply checking the warrant would have avoided the mistaken entry. Moreover, evidence before the court showed that the houses were located on different parts of the street, separated by at least one other residence, and that their appearances were distinguishable.

No. 22-10441

*Id.* at 955. "[S]earching the wrong residence when [the officer] had done nothing to make sure he was searching the house described in the warrant" violated clearly established law. *Id.*

The dissent argues *Hartsfield* and *Rogers* constitute clearly established law that distinguishes Lewis's actions as objectively unreasonable under the fair warning analysis. Even if these two nonprecedential opinions were indicative of clearly established law, they would not support that Lewis violated that law. Lewis erred, but he made significant efforts to identify the correct residence. As the district court summarized, Lewis

> (1) reviewed the search warrant; (2) conducted additional searches on the target residence through the Dallas Central Appraisal District website; (3) ran a computerized criminal history search of the occupant of the target residence; (4) debriefed with DEA agents twice; (5) was provided with "real-time intelligence that surveillance officers at the scene reported a truck pulling a white box trailer just pulled up in front of the target location and stopped;" and (6) observed the home and took note of the front windows, driveway, and the numbers on the front of the home in an attempt to confirm the residence as being the target location.

To elaborate on that final point, Lewis was careful to confirm the house had the proper arrangement and size of windows, but only later became aware that those window features were shared by the plaintiffs' home. Moreover, Lewis's confusion was compounded by misleading intelligence. When officers arrived, the white trailer was not parked in front of the target house. Lewis correctly identified that fact, but then erred in redirecting the officers. Lewis was far more careful than the officers in the two opinions cited to us as showing he violated clearly established law.

The "central concern" when evaluating the immunity question "is whether the official has fair warning that his conduct violates a constitutional

No. 22-10441

right." *Delaughter*, 909 F.3d at 140. That means the "dispositive question is whether the violative nature of *particular* conduct is clearly established." *Morrow*, 917 F.3d at 875 (emphasis in original) (quotation marks and citation omitted). Here, the plaintiffs have not cited authority demonstrating that Lewis's conduct violated clearly established law.

We REVERSE the district court's denial of summary judgment to Lewis and REMAND in order for the district court to dismiss this suit.

No. 22-10441

James L. Dennis, *Circuit Judge*, dissenting:

I respectfully dissent from the majority opinion. The district court properly denied qualified immunity to Lieutenant Mike Lewis, commander of the Waxahachie Police Department (WPD) SWAT team. The Jimersons' Fourth Amendment claim against Lewis is based on his failure to take sufficient steps to ensure that his team executed a no-knock warrant at the correct address. The district court found that factual disputes as to the reasonableness of Lewis' efforts to identify the target house precluded granting qualified immunity to Lewis. While I agree with the majority's finding that there are no factual disputes as to Lewis' actions in leading the SWAT team to the wrong residence, I disagree that Lewis is entitled to qualified immunity[1] under clearly established law.

Based on the undisputed facts in this case, Lewis failed to use the intelligence he received from the Drug Enforcement Administration (DEA) that would have easily allowed him to direct the SWAT team to the target house. The DEA alerted Lewis that the house number was painted on the curb and affixed to a wooden pole on the deck, and that the target house was the thirteenth one on the block. Despite having this information, Lewis did not even check the number of the house before instructing the SWAT team to execute the warrant on the Jimersons' home—separated from the target

---

[1] It's worth noting that one of our colleagues recently suggested that "the Supreme Court's original justification for qualified immunity—that Congress wouldn't have abrogated common-law immunities absent explicit language—is faulty because the 1871 Civil Rights Act *expressly included such language.*" *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) (Willett, J., concurring); *see also* Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201, 207–08 (2023) (arguing that "the problem with current qualified immunity doctrine is not just that it departs from the common law immunity that existed when Section 1983 was enacted," but also that "no qualified immunity doctrine at all should apply in Section 1983 actions, if courts stay true to the text adopted by the enacting Congress and other evidence of legislative intent").

house by more than one[2] residence—by deploying a flash bang, breaking all their front windows using the "break and rake" technique, and forcing open the front door. Lewis wrote in an incident report that he "believed" the numbers on the Jimersons' home to be that of the target house, despite the fact that he admitted his view was obscured because the Jimersons "had a brightly glowing porch light directly above them that was causing a reflection on the siding of the house." Regardless of Lewis' ability to see the numbers on the home, the search warrant alerted him that the target house number was written on the curb in front of the house and on a wooden pole supporting the house—not on the front of the house like at the Jimerson residence. Even more glaring are the notable physical distinctions between the two houses: while there is a prominent wheelchair ramp that protrudes from the Jimerson house with railings that appear to be waist-high, the target house had no such ramp and featured a chain-link fence around the perimeter of the property—differences evident from the photographs of the target house provided to Lewis before the execution of the warrant.

Though it is undisputed that Lewis violated the Jimersons' Fourth Amendment rights in executing a SWAT-style entry into their home without a warrant, the majority finds that the Jimersons' claim fails because the unlawfulness of Lewis' actions were not clearly established law.[3] Specifically,

---

[2] As the majority opinion acknowledges, the SWAT team initially assembled on the front porch of the wrong house. After Lewis recognized that the SWAT team was at the wrong house, he instructed the SWAT team to execute the warrant on the Jimerson residence, which was in the *opposite* direction of the target residence.

[3] We have sometimes described the second prong of the qualified immunity analysis as an inquiry into whether an official's "actions were objectively unreasonable in light of clearly established law." *See, e.g.*, *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) (Willett, J.). The different phrasing is of no moment because, of course, violating a clearly established right *is* objectively unreasonable. *See Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017); *see also Anderson v. Creighton*, 483 U.S. 635, 653 (1987) ("Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established

the majority concludes that there is not enough legal authority supporting the Jimersons' contention that Lewis' efforts to locate the target residence were constitutionally deficient. While the majority is certainly correct that "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), they nonetheless unfairly limit the legal authority the Jimersons may rely on in rebutting Lewis' assertion of qualified immunity. The "focus" of the qualified immunity analysis is whether the officer had "fair notice" that his conduct was unlawful, and here the clearly established law gave Lewis ample warning of the constitutionally sufficient efforts required to ensure he directed the SWAT team to the correct residence. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (noting that the "focus" of qualified immunity analysis is "whether the officer had fair notice that her conduct was unlawful").

Contrary to the majority's assertion that there is no clearly established law that would have put Lewis on notice of the unlawfulness of his actions, the Supreme Court has stated that officers must make "a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." *Maryland v. Garrison*, 480 U.S. 79, 88 (1987). In *Garrison*, officers mistakenly executed a search warrant on the wrong apartment because they believed that the third floor of an apartment complex contained only one rather than two apartments. *Id.* There, the Supreme Court found that the officers made a reasonable effort to identify the correct apartment because "[t]he objective facts available to the officers at the time suggested no distinction between McWebb's apartment and the third-floor premises." *Id.* Specifically, those officers made a "reasonable effort" to

---

law[.]"); *Horvath v. City of Leander*, 946 F.3d 787, 800 (5th Cir. 2020) (Ho, J., concurring) (quoting *Pearson v. Callahan*, 555 U.S. 222, 232 (2009)).

identify the target residence where they: (1) went to the premises to see if it matched the description given by an informant; (2) checked with the Baltimore Gas and Electric Company to ascertain in whose name the third floor apartment was listed; and (3) checked with the Baltimore Police Department to make sure that the description and address of the suspect matched the information provided by the informant. *Id.* at 81–82, 85–86 n.10.

Moreover, *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995) "aptly illustrates the established right" at issue in the Jimersons' claim against Lewis. *See id.* at 955 (recognizing as "clearly established law" that "absent probable cause and exigent circumstances, a warrantless search of a residence violates the Fourth Amendment, unless the officers engage in reasonable efforts to avoid error"); *see also Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016) (explaining that where a case "does not constitute clearly established law for purposes of QI" it may still "aptly illustrates the established right"). In *Hartsfield*, the Eleventh Circuit denied qualified immunity where an officer "had the warrant in his possession" yet "did not check to make sure he was leading the other officers to the correct address" *Hartsfield*, 50 F.3d at 955. There, the officers' efforts to identify the target of the search warrant were insufficient where: (1) the numbers were clearly marked on the houses; (2) the houses were separated by at least one other residence; and (3) the houses were physically distinguishable; (4) there were no exigent circumstances; and (5) the raid occurred during the daytime. *Id.* at 952–55. Here, similarly, the numbers on the houses were clearly marked (despite it being nighttime), the houses were separated by at least one residence and were physically distinguishable, and there were no exigent circumstances. While Lewis arguably did more to identify the correct residence than the officer in *Hartsfield*, who "did nothing to make sure he was leading the officers to the correct residence," Lewis nonetheless could have easily avoided the mistaken entry by "simply checking" the house number or using

No. 22-10441

other information at his disposal to identify the correct residence. *Id.* at 955. In light of *Hartsfield*'s guidance interpreting the clearly established law in *Garrison*, the Jimersons rebutted Lewis' assertion of qualified immunity.

Our unpublished decision in *Rogers v. Hooper*, 271 F. App'x 431 (5th Cir. 2008) also supports the denial of qualified immunity to Lewis. In *Rogers*, we affirmed a grant of qualified immunity to an officer who mistakenly led his team to the wrong house where: (1) the two houses were next to each other; (2) the officer had previously been at the correct house twice; and (3) the minor differences between the houses were "less noticeable at night." Here, in contrast, the houses were not next to each other, and Lewis could have easily checked the number of the target house that was painted on the curb and affixed to a wooden beam supporting the home's porch. Moreover, the obvious physical distinctions between the houses would have been noticeable even at night; while the target house had a chain-link fence around it, the Jimerson house did not have any fence and featured a wheelchair ramp with waist-high railings along it. Because Lewis did not take the same steps[4] as the officer in *Rogers* to identify the correct residence, our nonprecedential case law supports the denial of qualified immunity.

In light of the efforts identified as adequate by the Supreme Court in *Garrison* and elaborated on by circuit courts, Lewis had "fair notice" of the minimum efforts required to comply with the Fourth Amendment when

---

[4] Notably, the officers in *Rogers* and *Garrison* each previously visited the correct houses as part of their efforts to identify the target of the search warrant, whereas here Lewis made no such attempts. *See Rogers*, 271 F. App'x at 433–43 (noting that the officers "had been at the correct house at least twice before"); *Garrison*, 480 U.S. at 86 n.10 ("The officer went to [the target residence] and found that it matched the description given by the informant."). WPD Police Chief Wade Goolsby even testified that after this incident, the WPD implemented additional procedures requiring officers to "get[] eyes on the location so that [the officer] not only sees the target, but the surrounding homes" before executing a search warrant.

No. 22-10441

identifying a house for the purposes of executing a search warrant. *Brosseau*, 543 U.S. at 198; *see also Hope v. Pelzer*, 536 U.S. 730, 731 (2002) ("Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."). As announced in *Garrison* and elucidated in *Rogers* and *Hartsfield*, it is "beyond debate" that Lewis' efforts to identify the target house were constitutionally deficient. *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). The panel should affirm the district court's denial of Lewis' assertion of qualified immunity.